FILED'07 JUL 30 14:31 USDC-ORM

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

RONALD DOYLE, ROBERT DEUEL, )
BENEDICT MILLER, and CHARLES ) CV 06-3058-PA
STEINBERG, )
 )
 Plaintiffs, )
 )
 v. ) **OPINION AND ORDER**
 )
CITY OF MEDFORD, and )
MICHAEL DYAL, )
 )
 Defendants. )

**PANNER, J.**

In this action, four retired employees of the City of Medford (the City) challenge the City's failure to provide continued health insurance coverage after retirement. Defendants are the City and the City Manager, Michael Dyal. Plaintiffs claim that the failure to provide health insurance coverage violated Or. Rev. Stat. § (ORS) 243.303(2), and City Resolution No. 5715; deprived plaintiffs of a constitutionally protected property interest; and discriminated against plaintiffs because of their age.

1 - OPINION AND ORDER

Defendants move for summary judgment. Plaintiffs move to continue the motion for summary judgment to allow discovery.

I grant defendants' motion for summary judgment as to plaintiffs' civil rights claim and federal age discrimination claim, and otherwise deny the motion. I dismiss without prejudice plaintiff's state law claims, with leave to refile in state court. I deny plaintiffs' motion for discovery.

## BACKGROUND[1]

### I. Members of the Teamsters Union

Plaintiff Charles Steinberg was a patrol officer in the City police department. He was born in 1950 and retired in 2003.

Plaintiff Benedict Miller was a detective in the City police department. He was born in 1950 and retired in 2006.

Before retirement, Miller and Steinberg belonged to Teamsters Local Union No. 23. Collective bargaining between the City and the Union determines the health care benefits for employees who are union members.

Before 1990, the City's health insurance program allowed employees to continue coverage after retirement. Compl. ¶ 4.2. In 1990, "the City negotiated with its police officers' union for a health insurance program [through the Oregon Teamsters Employers Trust (OTET)] that did not make available to retiring officers the election to continue their coverage under the City's

---

[1] Statements in the Background are provided for context only and are not findings of fact.

2 - OPINION AND ORDER

health insurance program." Id.

Robert Calkins, the City's risk manager, states that although OTET has been willing to cover retired Teamsters, the Teamsters have not voted to cover retirees.  Dyal, the City Manager, states that he cannot force Teamsters "to vote to have OTET provide coverage for the retired Teamster members."  Dyal Aff. at 2.

Calkins states that OTET allows retired members who pay premiums to continue OTET's health insurance coverage for 18 months after retirement, as required by COBRA (the Consolidated Omnibus Budget Reconciliation Act of 1985).  Under the Teamsters' agreement with the City, retired Teamsters may receive health insurance through the Oregon Public Employees Retirement System (PERS), if the retiree pays a 6% contribution.  Plaintiffs allege that health insurance coverage through PERS is inferior to OTET's coverage.

## II.  Management Employees

Plaintiff Ron Doyle was the Medford City Attorney.  He was born in 1949 and retired in 2005.

Plaintiff Robert Deuel was an engineer for the City.  He was born in 1949 and retired in 2003.

Doyle and Deuel were non-union, management employees.  From 1997 until 2002, ODS, which provided health insurance for management employees, allowed retired management employees to continue coverage if they paid premiums.  Effective in 2002, the

3 - OPINION AND ORDER

City contracted with OTET to provide health insurance coverage for management employees. OTET's proposed monthly premiums were several hundred dollars less than ODS's premiums. However, OTET categorically refused to cover retired management employees. Retired management employees may obtain health insurance coverage through PERS.

Dyal states that the City Council delegated to him "the discretionary duty of purchasing insurance and entering into agreements for health care benefits. . . . . I have sole discretion and authority to purchase or contract for health care benefits for employees of the City of Medford as to non-union employees." Dyal Aff. at 2. Dyal states that the City's decision to purchase health insurance coverage from OTET "had nothing to do with the age of any employee. Had it been possible to have OTET also provide coverage to retired members of the management group, that would have been done. But OTET would not provide such coverage at any price." Id. at 3-4.

Plaintiffs allege that when Dyal was informed that OTET would not cover management employees after retirement, he replied, "I don't care what the law says, this City is not going to spend one dime on retirees as long as I'm City Manager." Compl. ¶ 4.6.

## STANDARDS

The court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled

4 - OPINION AND ORDER

to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

## DISCUSSION

### I. Claim for Violations of 42 U.S.C. §§ 1981, 1983, 1985 by Deprivation of Property Interest

#### A. Background

Plaintiffs' third claim asserts that defendants deprived them of a constitutionally protected property interest. Plaintiffs allege, "ORS 243.303(2) and Resolution No. 5715 create valuable Constitutional property rights for each Plaintiff in the form of an option to elect participation in the City's health care insurance program upon their retirement, an interest protected by the United States Constitution and 42 U.S.C. §§ 1981, 1983, and 1985." Compl. ¶ 7.4.

ORS 243.303(2) provides:

> <u>The governing body of any local government that contracts for or otherwise makes available health care insurance coverage for officers and employees of the local government shall, insofar as and to the extent possible, make that coverage available for any retired employee of the local government</u> who elects within 60 days after the effective date of retirement to participate in that coverage and, at the option of the retired employee, for the spouse of the retired employee and any unmarried children under 18 years of age. The health care insurance coverage shall be made available for a retired employee until the retired employee becomes eligible for federal Medicare coverage, for the spouse of a retired employee until

5 - OPINION AND ORDER

>     the spouse becomes eligible for federal Medicare
>     coverage and for a child until the child arrives at
>     majority, and may, but need not, be made available
>     thereafter.  The governing body may prescribe
>     reasonable terms and conditions of eligibility and
>     coverage, not inconsistent with this section, for
>     making the health care insurance coverage available.
>     The local government may pay none of the cost of making
>     that coverage available or may agree, by collective
>     bargaining agreement or otherwise, to pay part or all
>     of that cost.

(Emphasis added.)

In 1986, the City adopted Resolution No. 5715.  Resolution No. 5715 allows retirees to continue coverage under the City's health insurance program until the retiree either voluntarily withdraws, becomes eligible for Medicare, is terminated for failure to pay premiums, or dies; or until the City or its carrier terminates coverage, or the City terminates its retiree program.  Franz Aff., Ex. 105, at 1.

**B.  Discussion**

Plaintiffs argue that ORS 243.303(2) and Resolution No. 5715 require the City to provide an option to continue health insurance coverage after retirement.  Defendants contend that plaintiffs have no constitutionally protected property interest in continued health insurance coverage.

The Fourteenth Amendment protects against the deprivation of property or liberty without due process.  See Brady v. Gebbie, 859 F.2d 1543, 1547 (9th Cir. 1988).  To establish a protected property interest, a person must have a "reasonable expectation or a 'legitimate claim of entitlement' to it, rather than a mere

6 - OPINION AND ORDER

'unilateral expectation.'" Id. at 1547-48 (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)). "A legitimate claim of entitlement arises if it is created by 'existing rules or understandings that stem from an independent source such as state law.' Thus '[s]tate law defines what is and what is not property' that is subject to the due process clause of the Fourteenth Amendment." Id. at 1548 (citations omitted). "[F]ederal constitutional law determines whether that interest constitutes 'property' protected by the Fourteenth Amendment." Knudson v. City of Ellensburg, 832 F.2d 1142, 1144-45 (9th Cir. 1987) (citations omitted). "Not every state entitlement rises to the level of a constitutionally protected property interest." Id. at 1145 (citing San Bernardino Physicians' Servs. Medical Group v. County of San Bernardino, 825 F.2d 1404, 1409 (9th Cir. 1987)). A state statute creates an entitlement to a governmental benefit only if the "statute sets out conditions under which the benefit *must* be granted or . . . sets out the *only* conditions under which the benefit may be denied." City of Santa Clara v. Andrus, 572 F.2d 660, 676 (9th Cir. 1978) (emphasis in original; citation omitted); Allen v. City of Beverly Hills, 911 F.2d 367, 370 (9th Cir. 1990).

ORS 243.303(2) provides that local governments which provide health insurance coverage to employees "shall" extend coverage to retired employees "insofar as and to the extent possible." The word "shall" implies a duty to act. See Scovill v. City of

7 - OPINION AND ORDER

Astoria, 324 Or. 159, 167, 921 P.2d 1312, 1317 (1996) ("shall" indicates mandatory course of action). However, the word "shall" is modified by the phrase, "insofar as and to the extent possible." Because "insofar as" means "to the extent that,"[2] the entire phrase "insofar as and to the extent possible" may be read as "to the extent possible." ORS 243.303(2) provides that the City shall extend health insurance coverage to retirees to the extent possible.

In an action where a city employee asserted a property interest in continued employment, the Ninth Circuit ruled that the employee had no property interest "[w]hen the only substantive restriction placed on a city is that its decision to terminate employment must be 'reasonable,' or in 'good faith.'" Allen, 911 F.2d at 371; Jacobson v. Hannifin, 627 F.2d 177, 180 (9th Cir. 1980). Similarly, no protected property interest arises here because ORS 243.303(2) does not sufficiently limit the conditions under which the City would be required to extend health insurance coverage to retirees. See Allen, 911 F.2d at 370; Thornton v. City of St. Helens, 425 F.3d 1158, 1164 (9th Cir. 2005) (whether state statute creates property interest depends on the extent to which statute contains mandatory language restricting discretion).

Plaintiffs cite Portman v. County of Santa Clara, 995 F.2d 898, 906-07 (9th Cir. 1993). There, a county ordinance provided

---

[2] American Heritage Coll. Dictionary 703 (3d ed. 2000).

8 - OPINION AND ORDER

...

that "persons in management positions <u>shall receive the same benefits</u> as available countywide to all other county employees," and that for persons terminated "in good standing" with ten years' experience, "accrued and unused sick leave <u>shall be paid</u> at the rate of 2% for each full year of service, not to exceed 50%, multiplied by the monetary value of such sick leave." (Emphasis added.) In other words, if an employee met certain defined conditions (good standing and ten years' experience), the ordinance at issue in <u>Portman</u> unequivocally mandated the payment of benefits to the employee upon termination. Here, ORS 243.303(2) requires continued health insurance coverage only to the extent that such coverage is "possible."

The same reasoning applies to the City Resolution. If anything, the Resolution allows the City more discretion than the statute, providing that coverage for retirees ceases upon "[t]ermination of the insurance coverage by the City or its carrier," or upon "[t]ermination of the retiree program by the City."

I grant defendants' motion for summary judgment as to plaintiffs' third claim for civil rights violations.

## II. Claim for Age Discrimination under the ADEA

Plaintiffs' fourth claim alleges that the City violated the the Age Discrimination in Employment Act (ADEA). The ADEA prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or

9 - OPINION AND ORDER

privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Establishing liability on plaintiffs' ADEA claim "depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision." Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993).[3] "Whatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome." Id.

Direct evidence of age discrimination is "'evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the fact finder to infer that that attitude was more likely than not a motivating factor in the employer's decision.'" Enlow v. Salem-Keizer Yellow Cab Co., 389 F.3d 802, 812 (9th Cir. 2004) (quoting Walton v. McDonnell Douglas Corp., 167 F.3d 423, 426 (8th Cir. 1999)) (further citations and emphasis omitted). Here, as direct evidence of age discrimination, plaintiffs cite Dyal's alleged vow (which he denies making) that the City would not pay retirees a dime as long as he was City Manager. Assuming for

---

[3] Plaintiffs' ADEA claim is based on a disparate treatment theory. Even assuming that plaintiffs are also relying on a disparate impact theory, I conclude that such a claim could not survive summary judgment. See Smith v. City of Jackson, 544 U.S. 228, 239-41 (2005) (elements of disparate impact claim under ADEA).

10 - OPINION AND ORDER

this motion that Dyal made the alleged statement, it shows only that Dyal distinguished between current and retired City employees.

A plaintiff may rely on circumstantial evidence of age discrimination. If an employer is in fact motivated by the employee's age and relies on an age-related factor to mask an age-based employment decision, the employer could be liable for age discrimination. For example, in <u>EEOC v. Local 350, Plumbers & Pipefitters</u>, 998 F.2d 641 (9th Cir. 1993) (as amended) (<u>Local 350</u>), the defendant union refused to allow retired union members to seek employment through the union hall if the retiree was receiving pension benefits. Union members could not retire until they were at least fifty-five years old. The Ninth Circuit held that there was age discrimination because of the "very close connection between age and the factor on which discrimination is based." 998 F.2d at 646.

In <u>Erie County Retirees Association v. County of Erie</u>, 220 F.3d 193 (3d Cir. 2000) (<u>Erie</u>), there was also a direct correlation between the employees' age and the challenged decision. There, the defendant employer paid health insurance premiums for retired employees until they became eligible for Medicare benefits at age 65. The <u>Erie</u> court held that the plaintiff retirees stated a prima facie claim of age discrimination under the ADEA because their Medicare eligibility was based solely on age, not employment status. See <u>Erie</u>, 220

11 - OPINION AND ORDER

F.3d at 215-16 & n.14.[4]

The facts here are more analogous to Hazen Paper than to Local 350 or Erie. In Hazen Paper, the defendant employer terminated the plaintiff a few weeks before his pension benefits would have vested. The Hazen Paper Court concluded that even assuming that the employer terminated the plaintiff to prevent his pension benefits from vesting, the employer had not violated the ADEA. (The Court noted that such a termination could violate ERISA.) "When an employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age, as pension status typically is." 507 U.S. at 611; see also Devlin v. Transportation Communications Int'l Union, 175 F.3d 121, 127-28 (2d Cir. 1999) (union's elimination of death benefits did not violate ADEA even though older employees more likely to die than younger ones). Similarly, retirement status, while correlated with age, is "analytically distinct" from age. There is no evidence that age was a motivating factor in the City's decision to deny plaintiffs continued coverage under the City's health insurance program. The City is entitled to summary judgment on plaintiffs' ADEA claim.

---

[4] After Erie, the EEOC promulgated a regulation allowing employers to provide inferior health benefits to retirees who are eligible for Medicare. See AARP v. EEOC, ___ F.3d ___, 2007 WL 1584385 (3d Cir. June 4, 2007) (regulation within EEOC's authority under the ADEA).

12 - OPINION AND ORDER

### III. Dismissal of State Law Claims Without Prejudice

Plaintiffs' remaining claims are under state law. The court has discretion under 28 U.S.C. § 1367(c) to decline to exercise jurisdiction over state law claims under these circumstances. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of the factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

Here, plaintiffs' first and second claims that ORS 243.303(2) and City Resolution No. 5715 create a private right of action present novel and important issues of state law. I dismiss plaintiffs' state law claims without prejudice and with leave to refile in state court.

### IV. Plaintiffs' Motion for Discovery

Plaintiffs move under Federal Rule of Civil Procedure 56(f) for a continuance of summary judgment proceedings pending discovery.

When considering a motion for summary judgment, a court "may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had." Fed. R. Civ. P. 56(f). To obtain a continuance under Rule 56(f), plaintiffs must show that discovery would uncover specific facts which would

13 - OPINION AND ORDER

preclude summary judgment. Maljack Prods. v. GoodTimes Home Video Corp., 81 F.3d 881, 888 (9th Cir. 1996). This court has discretion in resolving motions under Rule 56(f). Id. at 887.

Here, discovery is not likely to reveal facts that could preclude summary judgment on plaintiffs' federal claims. No discovery is required to determine whether state law creates a constitutionally protected property right. Some of the subjects on which plaintiffs seek discovery, such as the running of the statute of limitations, are not relevant to my rulings. Plaintiffs deposed Dyal on the ADEA claim and other issues.

## CONCLUSION

Defendants' motion for summary judgment (#12) is granted as to plaintiffs' claims under federal law (claims three and four), and denied as to plaintiffs' claims under state law (claims one, two, and five). Plaintiffs' state law claims (claims one, two, and five) are dismissed without prejudice and with leave to refile in state court. Plaintiffs' Rule 56(f) motion (#26) is denied.

IT IS SO ORDERED.

DATED this ___30___ day of July, 2007.

*signature*
OWEN M. PANNER
U.S. DISTRICT JUDGE

14 - OPINION AND ORDER